UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HORACE CRUMP #236528,

               Plaintiff,                         Hon. Paul L. Maloney

v.                                           Case No. 1:18-cv-1216

RICKEY COLEMAN, et al.,

               Defendants.

_____/

## **REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants Douglas Cook, Michael Schafer, Randee Rewerts, and Kelly Stevens' Motion for Partial Summary Judgment (MDOC Defendants) (ECF No. 67); Defendants Rickey Coleman, D.O., and Scott Holmes, M.D.'s Motion for Summary Judgment (ECF No. 80); and MDOC Defendants' Motion for Summary Judgment (ECF No. 85). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that: (1) MDOC Defendants' Motion for Partial Summary Judgment (ECF No. 67) be granted in part and denied in part; (2) Defendants Coleman and Holmes' Motion for Summary Judgment (ECF No. 80) be granted; (3) MDOC Defendants' Motion for Summary Judgment (ECF No. 85) be granted in part and denied in part; and (4) this action terminated.

## BACKGROUND

Plaintiff initiated this action on October 29, 2018, against the following individuals: (1) Dr. Rickey Coleman; (2) Dr. Scott Holmes; (3) Corrections Officer D. Cook; (4) Corrections Officer Michael Schafer; (5) Warden Randee Rewerts; and (6) registered Nurse Kelly Stevens.   The following allegations are contained in Plaintiff's complaint.   (ECF No. 1).

Plaintiff suffers from Multiple Sclerosis, optic neuritis, and "possible" traumatic brain injury.   As a result, Plaintiff experiences visual impairment, pain, spasms, seizures, and paralysis.   In November 2017, Dr. Holmes renewed Plaintiff's Ultram prescription and recommended that Plaintiff's injection therapy be provided daily instead of weekly.   In January 2018, however, Dr. Coleman overruled Dr. Holmes' instructions and instead reduced Plaintiff's Ultram prescription.   Plaintiff objected to this decision and his requests for an alternative medication were denied.

After suffering a "relapse," Plaintiff requested treatment from Dr. Holmes.   The doctor, however, "refused to see" Plaintiff, informing him that because he continued to file kites and grievances, he would now just "have to deal with [his] pain."   In the absence of appropriate medication, Plaintiff continued to experience pain, seizures, spasms, stress, insomnia, impaired mobility, and cognitive limitations.   On April 4, 2018, Plaintiff was instructed by CO Schafer not to use a particular door to enter the housing unit.   When Plaintiff asked CO Schafer why other prisoners were nevertheless permitted to go through the door in question, Schafer responded, "none of them grieve."

On an unspecified date, COs Cook and Schafer informed Plaintiff's assistant, Maclin, that he could no longer accompany Plaintiff to appointments or help him with daily tasks.   Instead, Maclin was limited to helping Plaintiff get his food tray.   When Maclin inquired about this change, CO Cook informed Maclin that "it was because he grieved."   Later that day, Plaintiff was issued a misconduct for loitering.   The prisoner with whom Plaintiff was associating at the time, however, was not charged with loitering.

On or about April 16, 2018, the "wheelchair lift" in Plaintiff's housing unit broke after which Plaintiff simply walked to health care, the library, food service, and other places within the facility.[1]   On April 20, 2018, COs Cook and Schafer "ordered [Plaintiff] to stay on the handicap wing."   When Plaintiff indicated that he needed to go to health care to receive his medication, Cook and Schafer refused to allow Plaintiff to leave the unit.   Cook and Schafer also refused to call health care on Plaintiff's behalf.   Denied his medication, Plaintiff began experiencing pain and his condition worsened.

On April 24, 2018, MDOC Director Heidi Washington visited the facility where Plaintiff was housed.   Plaintiff spoke with Washington and reported his complaints. Warden Rewerts later assigned Plaintiff to segregation for "whining" and "bitching." The Warden forced Plaintiff to carry his property and walk to the segregation unit, which caused Plaintiff to experience "pain and injury."

---

1 Plaintiff was housed in the "handicap wing," which was reserved for prisoners, like Plaintiff, experiencing visual, auditory, and/or ambulatory limitations and/or difficulties. (ECF No. 109-1, PageID.1215-18).

3

On May 4, 2018, RN Stevens told Plaintiff that his filing of grievances "could interfere with" his medical treatment.    On May 8, 2018, Plaintiff used the stairs because the elevator was not operating.    Stevens instructed prison personnel that Plaintiff could be charged with a misconduct for using the stairs.    Plaintiff was, in fact, subsequently charged (and convicted) of a misconduct for using the stairs.

On June 18, 2018, CO Cook threatened to charge Plaintiff with a misconduct for being late for a health care appointment.    Plaintiff informed Cook that he cannot proceed to health care until he is summoned, to which Cook threatened to "ticket" Plaintiff the next time health care called for Plaintiff.    As a result, Plaintiff instructed health care not to summon him for further appointments.

Plaintiff alleges that Defendants Coleman, Holmes, Cook, Schafer, Rewerts, and Stevens denied him medical care and/or subjected him to improper living conditions in violation of his Eighth Amendment rights.    Plaintiff alleges that Defendants Holmes, Cook, Schafer, Rewerts, and Stevens subjected him to unlawful retaliation in violation of his First Amendment rights.    Finally, Plaintiff alleges that Defendants subjected him to intentional infliction of emotional distress in violation of Michigan law.    The MDOC Defendants move for summary judgment on the ground that Plaintiff has failed to properly exhaust his administrative remedies.    All Defendants also move for summary judgment on the ground that Plaintiff has failed to establish the existence of genuine factual disputes necessitating trial.

4

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."  *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial."  *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Amini*, 440 F.3d at 357.  The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient.  *Daniels v. Woodide*, 396 F.3d 730, 734-35 (6th Cir. 2005).  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial."  *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).   Rather, the non-moving party "must be able to point to some facts that may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and . . . may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54.   In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## EXHAUSTION STANDARD

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).   Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007).   Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Ibid*.

With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006).   In *Bock*, the Court reiterated that

6

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to □properly exhaust.□   The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison□s requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 provides that a prisoner, prior to submitting a grievance, attempt to resolve the issue with staff, unless prevented by circumstances beyond his or her control, or the issue falls within the jurisdiction of Internal Affairs. MDOC Policy Directive 03.02.130 ¶ P (July 9, 2007).   If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a grievance, but the prisoner must pursue such through all three steps of the grievance process as detailed in the Policy Directive. MDOC Policy Directive 03.02.130 ¶¶ R, V, BB, FF (July 9, 2007).

## <u>ANALYSIS</u>

### I.    **Eighth Amendment Claims**

Plaintiff alleges that Defendants Coleman, Holmes, Cook, Schafer, Rewerts, and Stevens were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights.

#### A.    Eighth Amendment – Denial of Medical Treatment

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed.   *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976).   Accordingly,

the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). If, however, the prisoner "has received on-going treatment for his condition and claims that this treatment was inadequate," he must demonstrate that his care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Ibid*.

If the prisoner satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

8

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847). To satisfy this part of the analysis, the prisoner must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005).

To the extent, however, that a prisoner simply disagrees with the treatment he received, or asserts that he received negligent care, summary judgment is appropriate. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

B.    Eighth Amendment – Conditions of Confinement

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur

9

during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, Plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

With respect to the objective prong of the analysis, contemporary standards of decency determine whether conditions of confinement are cruel and unusual. *See Hadix*, 367 F.3d at 525. Contemporary standards of decency are violated only by "extreme deprivations" which deprive the prisoner of the "minimal civilized measure of life's necessities." *Ibid.* If the objective test is met, the Court must then determine whether Defendants acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, was the individual deliberately indifferent to inmate health or safety. *Ibid.* But the Eighth Amendment is not implicated where prison officials simply acted with negligence. *See Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). In sum, to establish that a defendant acted with deliberate indifference, Plaintiff must "present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004).

C.    Defendants Holmes and Coleman

Plaintiff's claims against Defendants Holmes and Coleman arise from events beginning in November 2017.    On November 9, 2017, Plaintiff was examined by Dr. Holmes.    (ECF No. 80, PageID.679-81, 903).    The doctor made changes to Plaintiff's treatment and medication regimen.    (*Id.*).    Plaintiff continued thereafter to receive medical care and treatment from Dr. Holmes and others.    (ECF No. 80, PageID.682-96, 903-04).    On January 18, 2018, Dr. Holmes submitted a request to the Pain Management Committee that Plaintiff be approved to receive two 50 mg Ultram tablets three times daily.    (ECF No. 80, PageID.697-702, 904).    Defendant Coleman denied this request and instead approved Plaintiff to receive one 50 mg Ultram tablet twice daily.    (ECF No. 80, PageID.697-702, 904, 911).    Plaintiff alleges that Dr. Coleman's refusal to approve Dr. Holmes' prescription request violates his Eighth Amendment rights.    Plaintiff further alleges that Dr. Holmes' failure to resubmit his original request or to "consider an alternative" course of treatment likewise violated his Eighth Amendment rights.

Plaintiff's claim against Defendant Coleman constitutes nothing more than a disagreement with the doctor's professional judgment and treatment decisions. Defendants have submitted more than 200 pages of treatment records demonstrating that Plaintiff has consistently received medical care and treatment for his various ailments.    (ECF No. 80, PageID.678-901).    Defendant Coleman has submitted an affidavit in which he asserts that the reason he modified Dr. Holmes' request was that "[c]hronic use of Ultram medication, due to its mood-altering effects, raises the risk of

potential addiction."   (ECF No. 80, PageID.911).    Simply put, Plaintiff cannot establish that Dr. Coleman's treatment decision was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Instead, Plaintiff simply disagrees with the doctor's medical judgment or finds such to constitute negligence or malpractice, neither of which implicate the Eighth Amendment. Accordingly, the undersigned recommends that Defendant Coleman is entitled to summary judgment as to this claim.

As for Dr. Holmes' failure to resubmit his original Ultram request or to "consider an alternative" course of treatment, the result is the same.   First, Plaintiff has presented no evidence that had Dr. Holmes resubmitted the request in question that a different outcome would have resulted.   As for the doctor's failure to consider an alternative course of action, such simply reflects Plaintiff's disagreement with Dr. Holmes' treatment decisions and professional judgment.   As noted immediately above, however, such does not implicate the Eighth Amendment.   The undersigned, therefore, recommends that Defendant Holmes is entitled to summary judgment as to this claim.

D.    Defendants Cook and Schafer

Plaintiff alleges that Cook and Schafer violated his Eighth Amendment rights by: (1) instructing Plaintiff's assistant that he could no longer accompany Plaintiff to appointments or help him with daily tasks; (2) ordering Plaintiff to remain in the handicap wing; and (3) refusing to allow Plaintiff to go to health care to receive his medication and refusing to contact health care so that Plaintiff could receive his medication.   The Court interprets the first two items as asserting conditions of

confinement claims, whereas the latter asserts denial of medical treatment claims.

1.    Plaintiff's Assistant

Plaintiff alleges that he was provided a prisoner "assistant," Rossi Maclin, who helped him with a variety of "everyday" tasks.    Plaintiff asserts that on an unspecified date, Maclin was instructed by Defendants Cook and Schafer that he "could no longer assist [Plaintiff] beyond getting [Plaintiff's] food tray."    (ECF No. 109, PageID.1216). Plaintiff has presented no evidence that he required assistance to perform the tasks Maclin was performing for him.    Plaintiff likewise has presented no evidence that as a result of the decision to limit Maclin's ability to assist Plaintiff, he suffered any detriment or adverse consequence.    Simply put, Plaintiff has presented no evidence that the conduct in question deprived him of the "minimal civilized measure of life's necessities." Accordingly, the undersigned recommends that Defendants Cook and Schafer are entitled to summary judgment as to this claim.

Defendants Cook and Schafer are also entitled to relief on the alternative ground that Plaintiff has failed to properly exhaust these claims.    Defendants have submitted evidence regarding the grievances Plaintiff pursued through all three steps of the grievance process during the relevant time period.    (ECF No. 68, PageID.535-81).    In response, Plaintiff has identified one additional grievance which he asserted.    (ECF No. 1-1, PageID.55-56).    None of these grievances concern these claims.    Accordingly, the undersigned recommends that, as to these particular claims, Defendants Cook and Schafer are entitled to summary judgment on the alternative ground that Plaintiff failed to exhaust his administrative remedies.

13

2.    Ordering Plaintiff to Remain in the Handicap Wing

As noted above, Plaintiff alleges that the elevator that serviced the "handicap wing" broke on or about April 16, 2018.   Plaintiff also had a "no stairs" restriction imposed by health care which precluded Plaintiff from using the stairs.   (ECF No. 86-4, PageID.1000-1005).    Despite this restriction, once the elevator stopped working, Plaintiff navigated through the facility by using the stairs.   (ECF No. 109, PageID.1216).   On April 18, 2018, Defendant Stevens requested guidance as to how to address prisoners with "no stairs" restrictions given that the elevator in the handicap wing was not working.   (ECF No. 86, PageID.1002).   The Health Unit Manager instructed Stevens that "no steps means no steps."   (*Id*.).   On April 20, 2018, Plaintiff attempted to exit the handicap wing via the stairs, but Defendant Cook ordered Plaintiff to remain in the unit because "he did not have authorization to use the stairs."   (ECF No. 86, PageID.1005).   Plaintiff alleges that this order violated his Eighth Amendment rights.   The Court disagrees.

Plaintiff does not dispute that he was restricted, by an order imposed by his medical care providers, from using the stairs.   Plaintiff argues that, despite this restriction, he was able to adequately navigate up and down stairs.   (ECF No. 109, PageID.1216).   While this may be accurate, it is not particularly relevant.   Defendant Cook acted to enforce a valid restriction that the Health Unit Manager ordered be enforced.   On April 24, 2018, Plaintiff was moved to a different wing of the prison with a functioning elevator.   (ECF No. 86, PageID.1020, 1024; ECF No. 109, PageID.1218). Thus, the effect of Defendant Cook's actions was that, at worst, Plaintiff was confined to

14

his unit for four days.   In sum, Defendant Cook's action to enforce Plaintiff's prescribed "no stairs" limitation hardly deprived Plaintiff of the "minimal civilized measure of life's necessities."   Accordingly, the undersigned recommends that Defendants Cook and Schafer are entitled to summary judgment as to this claim.

Defendants are also entitled to relief on the alternative ground that Plaintiff has failed to properly exhaust these claims.   The evidence submitted by the parties on the issue of exhaustion demonstrates that Plaintiff failed to exhaust these claims. Accordingly, the undersigned recommends that, as to these particular claims, Defendants Cook and Schafer are entitled to summary judgment on the alternative ground that Plaintiff failed to exhaust his administrative remedies.

3.    Plaintiff's Attempts to Obtain his Medications

Plaintiff alleges that on April 20, 2018, Defendants Cook and Schafer "ordered [Plaintiff] to stay on the handicap wing."   When Plaintiff indicated that he needed to go to health care to receive his medication, Cook and Schafer refused to allow Plaintiff to leave the unit.   Cook and Schafer also refused to call health care on Plaintiff's behalf. As a result, Plaintiff allegedly experienced pain and a worsening of his condition. Plaintiff alleges that Defendants' actions violated his Eighth Amendment right to receive adequate medical treatment.

There exists a factual dispute whether Plaintiff received his medication on April 20, 2018.   Defendant Cook asserts that health care delivered Plaintiff's medication to the handicap unit on April 20, 2018.   (ECF No. 86, PageID.1009). Plaintiff counters in his affidavit, however, that his medication was not delivered to the

15

unit on this date.    (ECF No. 109, PageID.1216).    Defendants are nevertheless entitled to summary judgment.    Plaintiff asserts that he was denied his medication on April 20, 2018, but presents no evidence that he was denied his medication on any other day. Plaintiff has also failed to present evidence that he experienced any detrimental effect resulting from the one-day delay in the provision of medication.    *See, e.g., Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013).    Accordingly, the undersigned recommends that Defendants Cook and Schafer are entitled to summary judgment as to these claims.

With respect to exhaustion, the undersigned finds that Defendants are not entitled to relief on this basis.    Plaintiff submitted a grievance regarding these claims and pursued such through all three steps of the grievance process.    (ECF No. 68, PageID.568-72).    Accordingly, the undersigned recommends that, as to these particular claims, Defendants Cook and Schafer are not entitled to summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies.

E.    Defendant Rewerts

As previously noted, on April 24, 2018, Plaintiff was moved to a different wing of the prison with a functioning elevator.    Plaintiff alleges that Defendant Rewerts violated his Eighth Amendment rights by forcing him to walk up a flight of stairs to his new housing unit.    While Plaintiff was subject to a "no stairs" restriction, Plaintiff concedes that he was nevertheless able to navigate stairs without difficulty.    (ECF No. 109, PageID.1215-18).    Plaintiff likewise does not allege that he was unable to walk to his new housing unit or that doing so subjected him to injury.    While the more prudent course of action may have been to transport Plaintiff to his new housing unit,

16

requiring Plaintiff instead to walk to this location hardly deprived him of the "minimal civilized measure of life's necessities." Accordingly, the undersigned recommends that Defendant Rewerts is entitled to summary judgment as to this claim.

Defendant is also entitled to relief on the alternative ground that Plaintiff has failed to properly exhaust this claim. The evidence submitted by the parties on the issue of exhaustion demonstrates that Plaintiff failed to exhaust this claim. Accordingly, the undersigned recommends that, as to this claim, Defendant Rewerts is entitled to summary judgment on the alternative ground that Plaintiff failed to exhaust his administrative remedies.

F.    Defendant Stevens

As previously noted, on April 18, 2018, Defendant Stevens requested guidance on how to address prisoners with "no stairs" restrictions given that the elevator in the handicap wing was not working. The Health Unit Manager instructed Stevens that "no steps means no steps." Plaintiff alleges that after receiving this response, Stevens instructed prison officials that prisoners "could be ticketed and sanctioned" for using the stairs contrary to a "no stairs" restriction. Plaintiff was charged with Disobeying a Direct Order, on May 8, 2018, for using the stairs without authorization and contrary to his medical restrictions. (ECF No. 1, PageID.69). Stevens did not issue this misconduct charge, but Plaintiff argues that such was issued at her request.

Plaintiff does not dispute that he was, in fact, using the stairs on the date in question without authorization and in contravention of his "no stairs" restriction. The decision by Defendant Stevens to instruct prison officials to enforce Plaintiff's medically

17

prescribed "no stairs" limitation did not deprive Plaintiff of the "minimal civilized measure of life's necessities."    Accordingly, the undersigned recommends that Defendants Stevens is entitled to summary judgment as to this claim.

Defendant is also entitled to relief on the alternative ground that Plaintiff has failed to properly exhaust this claim.    The evidence submitted by the parties on the issue of exhaustion demonstrates that Plaintiff failed to exhaust this claim.    While Plaintiff did submit a grievance against Defendant Stevens regarding this claim, (ECF No. 68, PageID.549-52), it was properly rejected at all three steps as improperly asserting multiple unrelated issues.    *See* MDOC Policy Directive 03.02.130 ¶ G (July 9, 2007). Accordingly, the undersigned recommends that, as to this claim, Defendant Stevens is entitled to summary judgment on the alternative ground that Plaintiff failed to exhaust his administrative remedies.

## II.    First Amendment Claims

Plaintiff asserts many claims that Defendants unlawfully retaliated against him in violation of his First Amendment rights.

### A.    Retaliation Standard

To prevail on his retaliation claims, Plaintiff must satisfy three elements: (1) he was engaged in constitutionally protected conduct; (2) a defendant took adverse action against him that would deter a person of ordinary firmness from continuing to engage in protected conduct; and (3) the adverse action was motivated by Plaintiff's protected conduct.    *See Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010).

18

With respect to causation, courts recognize that retaliation is easy to allege and "is often very difficult to prove with direct evidence."  *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012).   Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken.  *Thaddeus-X*, 175 F.3d at 399 (citations omitted).   Conclusory allegations of retaliatory motive are insufficient.  *See Skinner v. Bolden*, 89 Fed. Appx. 579, 579-80 (6th Cir., Mar. 12, 2004). Instead, Plaintiff must, at a minimum, allege a chronology of events from which retaliation can plausibly be inferred.  *See Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998); *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004).

On summary judgment, the causation element is analyzed under the burden-shifting framework articulated in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977).   *See Thomas v. Eby*, 481 F.3d 434, 441-42 (6th Cir. 2007). Plaintiff must first present evidence that his protected conduct was a motivating factor in the defendant's action.   Even if Plaintiff makes this showing, Defendant is entitled to summary judgment if he demonstrates that he "would have taken the same action even without the protected activity."  *Eby*, 481 F.3d at 441-42.   Moreover, as the Supreme Court recently held, when alleging retaliation "it is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured – the motive must *cause* the injury.   Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."  *Nieves v. Bartlett*, 139 S.Ct. 1715, 1722 (2019).

19

B.    Defendant Holmes

In his complaint, Plaintiff alleges that after suffering a "relapse" of an unknown condition, Dr. Holmes "refused to see him."   Plaintiff alleges that the doctor refused to examine him because Plaintiff continued to submit kites requesting treatment.   While Plaintiff does not expressly identify in his complaint the date on which this exchange allegedly occurred, he does reference a document attached to his complaint. Specifically, Plaintiff references a Step II grievance appeal form.   (ECF No. 1, PageID.3-4, 19).   In this grievance appeal, Plaintiff stated that he "had an attack" on May 13, 2018, after which Dr. Holmes refused to examine him.   (ECF No. 1, PageID.19).

Plaintiff's medical records demonstrate that he was examined by a Physician's Assistant and a Registered Nurse on May 13, 2018, in response to Plaintiff's complaints of a "flare up" of his Multiple Sclerosis.   (ECF No. 80, PageID.752-56).   Plaintiff was provided medication and a wheelchair.   (*Id.*).   Dr. Holmes reviewed Plaintiff's status the following day.   (ECF No. 80, PageID.757).   Plaintiff was also examined by Dr. Holmes on June 5, 2018.   (ECF No. 80, PageID.758-60).   Plaintiff does not dispute that he was, in fact, examined on these dates.   In light of this evidence, Plaintiff's claim fails the adverse action prong.

Plaintiff was examined by two medical professionals the very day he reported experiencing a "flare up" of his Multiple Sclerosis.   Plaintiff's status was reviewed the following day by Dr. Holmes who also examined Plaintiff shortly thereafter.   Plaintiff has presented no evidence that the treatment he received was inadequate or deficient. Thus, Plaintiff's claim that he was subjected to adverse action is not that he was denied

20

treatment, but rather that he was denied treatment by the care provider of his choice. Prisoners enjoy no right to receive medical treatment from any specific medical provider. *See, e.g., Torricellas v. Bedford*, 2017 WL 3275969 at *4 (C.D. Cal., May 10, 2017); *Petty v. Sampong*, 2014 WL 4662397 at *4 (D. Md., Sept. 16, 2014)  The Court finds that Plaintiff's claim of retaliation involves nothing more than a de minimis injury insufficient to deter a person of ordinary firmness from engaging in protected conduct. *See, e.g., Maben v. Thelen*, 887 F.3d 252, 266 (6th Cir. 2018) (summary judgment is appropriate where the alleged retaliatory action is "inconsequential").   Accordingly, the undersigned recommends that Defendant Holmes is entitled to summary judgment as to Plaintiff's retaliation claim.

      C.     Defendants Cook and Schafer

      Plaintiff has asserted several distinct claims of retaliation against Defendants Cook and Schafer.

      1.     Prisoner Assistant

      As noted above, Plaintiff alleges that on an unspecified date Defendants Cook and Schafer informed Plaintiff's prisoner assistant that he "could no longer assist [Plaintiff] beyond getting [Plaintiff's] food tray."   Plaintiff alleges that Defendants took this action in retaliation for filing grievances.   Defendants argue that they are entitled to relief because Plaintiff did not suffer sufficiently adverse action and, moreover, because Plaintiff cannot establish the requisite causal connection.   The Court is not persuaded.

While perhaps a close call, the Court finds that for a prisoner with the types of ailments from which Plaintiff suffers, losing assistance for a great many everyday tasks could, in the mind of a reasonable juror, be sufficient to deter a person of ordinary firmness from engaging in protected conduct. *See Maben*, 887 F.3d at 266 (unless alleged retaliatory action is "inconsequential" issue is for the jury to resolve). As for causation, Plaintiff has presented evidence sufficient for a reasonable juror to conclude that Defendants took this action for retaliatory reasons. Finally, Defendants have presented no evidence indicating that they undertook the action in question for reasons unrelated to Plaintiff's protected conduct. Accordingly, the undersigned recommends that with respect to this claim, Defendants are not entitled to summary judgment on the ground that Plaintiff failed to establish the existence of a genuine factual dispute.

The undersigned further recommends, however, that regarding this claim Defendants Cook and Schafer are entitled to summary judgment on exhaustion grounds. The evidence submitted by the parties on the issue of exhaustion demonstrates that Plaintiff failed to exhaust this claim. Accordingly, the undersigned recommends that with respect to this claim Defendants Cook and Schafer are entitled to summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies.

2.    Ordering Plaintiff to Remain on the Handicap Wing

As previously discussed, on April 20, 2018, when Plaintiff attempted to exit the handicap wing via the stairs, because the elevator was inoperable, he was ordered to remain in the unit because "he did not have authorization to use the stairs." Plaintiff alleges that Defendants Cook and Schafer prevented him from exiting the wing in

retaliation for filing grievances.

Plaintiff's claim fails because he cannot establish the requisite causal connection. Defendants have presented evidence that Plaintiff was instructed to remain in the wing because he was not permitted to use the stairs.   (ECF No. 86, PageID.1005, 1017).   As already noted, Plaintiff does not dispute that he was, in fact, subject to a medical order restricting him from using the stairs.   Defendants have established, therefore, that they restricted Plaintiff from exiting the handicap wing for reasons unrelated to his protected conduct.   Accordingly, the undersigned recommends that Defendants Cook and Schafer are entitled to summary judgment as to this claim.

Defendants are entitled to relief on the alternative ground that Plaintiff failed to properly exhaust this claim.  The evidence submitted by the parties on the issue of exhaustion demonstrates that Plaintiff failed to exhaust this claim.   Accordingly, the undersigned recommends that, as to this claim, Defendants Cook and Schafer are entitled to summary judgment on the alternative ground that Plaintiff failed to exhaust his administrative remedies.

3.    Charging Plaintiff with a Misconduct for Using the Stairs

On May 8, 2018, Plaintiff was charged by Defendant Schafer with Disobeying a Direct Order for using the stairs after being instructed to use the elevator because of his "no stairs" accommodation.   (ECF No. 1, PageID.68-71).   Plaintiff alleges that Defendants Cook and Schafer charged him with this misconduct in retaliation for filing grievances.   Plaintiff's claim fails because he has failed to present evidence sufficient for a reasonable juror to conclude that Defendants acted with the requisite intent.

23

Instead, Plaintiff simply asserts, without evidence, that causation is established. Defendant Cook is also entitled to relief because there is no evidence that he issued the ticket in question or was involved in the issuance of such.   Accordingly, the undersigned recommends that Defendants Cook and Schafer are entitled to summary judgment as to this claim.

With respect to exhaustion, however, Defendants are not entitled to relief. Because Plaintiff alleges that he was charged with a misconduct for retaliatory reasons, he was required to exhaust such claim by raising the issue in the administrative hearing. *See Siggers v. Campbell*, 652 F.3d 681, 694 (2011); *Smith v. Goulet*, 2018 WL 3688468 at *2 (W.D. Mich., Aug. 3, 2018).   Defendants have presented no evidence, however, establishing that Plaintiff failed to raise the issue of retaliation at the administrative hearing.   Accordingly, the undersigned recommends that as to this claim Defendants Cook and Schafer are not entitled to summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies.

4.     Refusing to Contact Health Care or Allow Plaintiff to go to Health Care

Plaintiff alleges that, on April 20, 2018, Defendants Cook and Schafer "ordered [Plaintiff] to stay on the handicap wing."   When Plaintiff indicated that he needed to go to health care to receive his medication, Cook and Schafer refused to allow Plaintiff to leave the unit.   Cook and Schafer also allegedly refused to call health care on Plaintiff's behalf.   As a result, Plaintiff allegedly experiencing pain and a worsening of his condition.   Plaintiff alleges that Defendants' acted out of a desire to retaliate against Plaintiff for filing grievances.

24

As noted above, there exists a factual question whether Plaintiff received his medication on April 20, 2018.   Moreover, the evidence shows that Plaintiff was denied his medication for only one day.   As noted above, this one-day denial of medication is insufficient to sustain an Eighth Amendment claim because Plaintiff has failed to demonstrate that such caused him to suffer a detrimental effect.   With respect to the adverse action element of a retaliation claim, however, the question is whether the alleged injury is inconsequential or instead capable of deterring a person of ordinary firmness from engaging in protected conduct.   Defendants have identified no authority concluding that denial of medication to treat a serious medical need for even one day is inconsequential.   On the other hand, the Court has located authority that "denial of medical care" is sufficient to satisfy the adverse action prong.   *See, e.g., Francis v. Ohio Department of Rehabilitation and Correction*, 2013 WL 5406798 at *5 (N.D. Ohio, Sept. 25, 2013).

Plaintiff has failed, however, to present evidence sufficient to preclude summary judgment on the causation prong.   While Plaintiff asserts that Defendants denied his request to obtain his medication because he had previously filed a grievance, Plaintiff does not identify the grievance in question or indicate against whom such grievance was filed or when such was filed.   Plaintiff's conclusory assertion that causation is satisfied is insufficient, however.   *See, e.g., Bean v. Tribley*, 2012 WL 2317580 (W.D. Mich., June 18, 2012) (where prisoner failed to identify the grievances which allegedly prompted the retaliatory conduct, or identify when and against whom such were asserted, summary judgment for failure to satisfy the causation prong was appropriate).   Accordingly, the

25

undersigned recommends that as to this claim, Defendants Cook and Schafer are entitled to summary judgment.

With respect to exhaustion, however, the undersigned finds that Defendants are not entitled to relief.   Plaintiff submitted a grievance regarding these claims and pursued such through all three steps of the grievance process.   (ECF No. 68, PageID.568-72).   Accordingly, the undersigned recommends that, as to this claim, Defendants Cook and Schafer are not entitled to summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies.

D.    Defendant Rewerts

As already noted, on April 24, 2018, Plaintiff was moved to a different wing of the prison with a functioning elevator.   Plaintiff further alleges that when he moved he was deprived of his "legal property, medications, hygiene items, [and] clean clothing." Plaintiff asserts that Defendant Rewerts moved him from the handicap wing and temporarily deprived him of his property in retaliation for reporting his complaints to MDOC Director Washington.

Defendant Rewerts asserts that Plaintiff was transferred from the handicap wing due to a lack of bed space and because the elevator in the handicap wing was inoperable. (ECF No. 86, PageID.1025-26).   With respect to the alleged deprivation of his property, Plaintiff has presented no evidence that he was, in fact, deprived of this property or that Rewerts was responsible for such.   Thus, Plaintiff's claim fails because Plaintiff can neither establish that he suffered an adverse action or that Defendant caused Plaintiff to experience such.   Accordingly, the undersigned recommends that Defendant Rewerts

26

is entitled to summary judgment as to Plaintiff's retaliation claims.

With respect to exhaustion, the undersigned finds that Defendant is not entitled to relief on this basis.   Plaintiff submitted a grievance regarding this claim and pursued such through all three steps of the grievance process.   (ECF No. 68, PageID.539-43). Accordingly, the undersigned recommends that, as to these particular claims, Defendant Rewerts is not entitled to summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies.

E.     Defendant Stevens

As discussed above, Plaintiff alleges that Defendant Stevens instructed prison officials that prisoners "could be ticketed and sanctioned" for using the stairs contrary to a "no stairs" restriction.   Plaintiff alleges that Stevens' actions constitute unlawful retaliation.   Plaintiff also alleges that Stevens threatened to interfere with his medical treatment as retaliation for Plaintiff filing a grievance against Defendant Holmes.

As to the former allegation, Plaintiff cannot satisfy the adverse action prong.   No reasonable person could find that a decision by a prison official to enforce a prisoner's medically prescribed limitation would deter a person of ordinary firmness from engaging in protected conduct.   Defendant Stevens' conduct constitutes, at most, a de minimis injury that is insufficient to maintain a First Amendment retaliation claim.

Regarding the latter allegation, however, the Court reaches a different conclusion. Plaintiff has presented sworn statements that Stevens threatened to interfere with his medical treatment because Plaintiff had submitted a grievance against Defendant Holmes.   (ECF No. 1, PageID.6; ECF No. 109, PageID.1218).   Defendant Stevens, on

the other hand, has submitted no evidence to the contrary.

Accordingly, the undersigned recommends that, as to Plaintiff's claim that Defendant Stevens instructed prison officials that prisoners "could be ticketed and sanctioned" for using the stairs, Defendant is entitled to summary judgment. With respect to Plaintiff's claim that Stevens threatened to interfere with his medical treatment, the undersigned recommends that Defendant is not entitled to summary judgment on the ground that Plaintiff failed to establish the existence of a genuine factual dispute.

The undersigned further recommends, however, that regarding this latter claim Defendant Stevens is entitled to summary judgment, on exhaustion grounds. The evidence submitted by the parties on the issue of exhaustion demonstrates that Plaintiff failed to exhaust this particular claim. Accordingly, the undersigned recommends that with respect to Plaintiff's claim that Stevens threatened to interfere with his medical treatment, Defendant Stevens is entitled to summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies.

## III.    State Law Claims

Plaintiff also asserts state law claims for intentional infliction of emotional distress (IIED). To prevail on a claim of IIED under Michigan law, Plaintiff must establish the following elements: (1) defendant's extreme and outrageous conduct; (2) defendant's intent or recklessness; (3) causation; and (4) the severe emotional distress of the plaintiff. *Ghannam v. Weiss*, 2013 WL 3025143 at *1 (Mich. Ct. App., June 18, 2013).

In the context of an IIED claim, "extreme and outrageous conduct" has been defined as conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yost v. Paychex, Inc.*, 1998 WL 1989811 at *16 (Mich. Ct. App., Sept. 29, 1998) (quoting Restatement Torts, 2d. § 46); *see also*, *Garretson v. City of Madison Heights*, 407 F.3d 789, 799 (6th Cir. 2005) (citing Michigan law). Plaintiff has presented no evidence that even approaches this daunting standard. Accordingly, the undersigned recommends that Defendants are all entitled to summary judgment as to these claims.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that: (1) MDOC Defendants' Motion for Partial Summary Judgment (ECF No. 67) be granted in part and denied in part; (2) Defendants Coleman and Holmes' Motion for Summary Judgment (ECF No. 80) be granted; and MDOC Defendants' Motion for Summary Judgment (ECF No. 85) be granted in part and denied in part; and (4) this action terminated.

While the undersigned recommends that Plaintiff's claims be dismissed, the undersigned does not find that an appeal of such dismissal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the undersigned further recommends that an appeal of this matter would be undertaken in good faith.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.    28 U.S.C. § 636(b)(1)(C).    Failure to file objections within the specified time waives the right to appeal the District Court's order.    *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

**Date:**   July 17, 2020

    /s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge